[Crim. No. 521. Third Appellate District.—September 14, 1920.]

## In the Matter of PEARL HUNTER et al., Wards of the Juvenile Court.

[1] Juvenile Court Law—Deprivation of Parents of Custody of Minors — Commitment to Industrial School — Evidence — Affirmance of Orders.—In this proceeding founded on subdivisions 2 and 11 of section 1 and section 9b of the juvenile court law (Stats. 1915, p. 1225), to have certain minors declared to be wards of the juvenile court, it is held that the determination that the interests of the minors, both material and intellectual, would be promoted by committing them to an industrial school instead of leaving them in the custody of their parents, is amply justified by the evidence.

APPEAL from orders of the Superior Court of Butte County committing minors to custody of Juvenile Court. H. D. Gregory, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. E. Davies for Appellants.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—These minors, of the age of seventeen years, were found to be delinquent and neglected children and were committed to the Boys' and Girls' Industrial School, at Lytton Springs, conducted by the Salvation Army. The court found that their parents were incapable of exercising over these children proper parental control; that their home, by reason of neglect on the part of the parents, was an unfit place for them; that for a long period of time they were not properly disciplined or controlled; that they were in great danger of being led astray into bad and immoral practices; that their education has been neglected, due to the indifference or carelessness of the parents; that they are in great need of proper parental training, care and

---

1. Denial of custody of child to parent for its well-being, notes, 2 Am. St. Rep. 183; 41 L. R. A. (N. S.) 564.

control, and that it is for the best interests of these minors that they be declared wards of the juvenile court, and that their care, custody, training, and education be committed to other hands than their parents.

The legal foundation for the action of the court is found in subdivisions 2 and 11 of section 1 and section 9b of the juvenile court law (Stats. 1915, p. 1225.) It is therein provided that among the persons to whom the law applies is one "who has no parent or guardian willing to exercise or capable of exercising proper parental control; or who has no parent or guardian actually exercising such proper parental control and who is in need of such control" and one "who is leading, or from any cause is in danger of leading, an idle, dissolute, lewd or immoral life." A limitation upon the authority of said court to deprive the parents of the custody of the delinquent is found in said section 9b, as follows: "No ward of the juvenile court as defined in this act shall be taken from the custody of his parent or legal guardian, without the consent of such parent or guardian, unless the court shall find such parent or guardian to be incapable of providing or to have failed or neglected to provide proper maintenance, training and education for said person . . . or unless the court shall find that the welfare of said person requires that his custody be taken from said parent or guardian."

[1] Taking up first the general consideration of the welfare of these girls, it is quite apparent that the determination of the court that their interests, both material and intellectual, would be promoted by committing them to said institution is amply justified. They were taken away from an abode of abject poverty, encompassed by circumstances utterly unfavorable to comfortable and decent living, the family of five occupying one small room in which all the ordinary functions of the domestic relations, cooking, dining, and lodging were centered, there being only a partition between this room and the shed or stable wherein were housed the horses and cattle. But of more importance is the fact that the education of these girls was not receiving the attention that its importance demands, and they were permitted to associate with men of an alien race, and one of them even encouraged by the parents, if not openly at least tacitly, to become the wife of a Hindu with whom she seems

to have been quite intimately acquainted. Other circumstances appear also which we need not detail specifically, that justly excite apprehension that the girls were likely to be led into a life of lewdness and immorality. To exchange such a situation for the comfortable, wholesome, educational, and moral surroundings of the home at Lytton Springs would be immediately characterized as favorable to the welfare of these girls by every right thinking person.

It is to be observed that the statute makes the actual welfare of the minor the chief consideration, but conceding, as stated by Mr. Justice Sloane in the case of *In re Gutierrez*, 47 Cal. App. 312, [190 Pac. 200], that "it is only in cases where there is demonstrated incapacity or something akin to criminal neglect that the law is justified in interfering with the natural relations of parent and child," there is evidence in the record to support the inference that the parents manifested such incompetence. This was due, no doubt, to their ignorance. They are not, of course, to be condemned for their poverty. It excites pity rather than condemnation although, as suggested by appellant, it is often a blessing in disguise. But most people, no doubt, would prefer to have more of the material comforts of life. Indeed, no one without the deepest regret that his declining days should be spent in discomfort can contemplate the condition of this old man who offered his life for his country and who fought under the gallant Custer in the war for the preservation of the Union. He deserves a better fate than seems to have befallen him, but in this connection we do not overlook the fact that there are two grown sons who should see that the necessities of their parents are supplied.

In the other matters, though, we think there is room for the opinion that the parents are not altogether blameless, due, as we have suggested, to their inability to appreciate the greatest and most imperative needs of their daughters. That they should have at least a common school education, no one will deny. That their intimate companions should be people of their own race goes without saying. And, of course, marriage between a white girl and a Hindu, whatever his character, is abhorrent and unthinkable to every enlightened and right thinking Caucasian. From the foregoing impending evils, no doubt, the trial judge thought to rescue these girls, and being in a much better position than

this court to appraise at their true value all the surrounding circumstances of the case, his judgment should not be disturbed without more cogent reasons than appear in the cause.

The orders are affirmed.

Nicol, P. J., *pro tem.*, and Hart, J., concurred.